UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:21-cr-00078-JMS-DML-1 |
| ) | |
| CHRISTOPHER COATES, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Christopher Coates is charged with possession of methamphetamine with intent to distribute and possession of a firearm by a convicted felon. [Filing No. 13.] He has filed a Motion to Suppress, seeking to suppress evidence discovered during searches of his person and his recreational vehicle. [Filing No. 32.] The Government requested a hearing on the motion, [Filing No. 47], and such hearing was held on November 29, 2021. The Motion to Suppress is now ripe for the Court's decision.

## I.
### FINDINGS OF FACT

The following are the Court's factual findings from the evidence presented at the hearing and submitted with the parties' briefs, including video evidence submitted by the parties. In making the findings that follow, the Court has considered the testimony and the demeanor of the witnesses who testified at the evidentiary hearing: Drug Enforcement Administration ("DEA") Special Agent Brent Arthur and Indianapolis Metropolitan Police Department ("IMPD") Detective Steven Brinker.

In November 2020, a confidential source ("the CS") provided information to the DEA suggesting that Mr. Coates was distributing methamphetamine. As a result, Special Agent

1

Arthur and others in the DEA began investigating Mr. Coates. During that investigation, Special Agent Arthur learned that Mr. Coates had multiple prior convictions, including convictions for burglary, robbery, and possession of a firearm by a convicted felon. [*See* Filing No. 8 at 3-8.] Special Agent Arthur also obtained photographs of Mr. Coates and his vehicle.

On November 17, 2020, the CS purchased two ounces of methamphetamine from Mr. Coates in a controlled purchase. During that transaction, Mr. Coates made statements to the CS indicating that he had plans to leave the area and travel throughout the United States in his recreational vehicle ("RV"). At some point, Mr. Coates also told the CS that he carried a firearm.

Following the November 17 controlled purchase, the CS contacted Mr. Coates and arranged to purchase four ounces of methamphetamine from him on November 24, 2020. The DEA decided to attempt to conduct an interdiction traffic stop of Mr. Coates while he was on his way to meet the CS. Accordingly, Special Agent Arthur enlisted the help of the IMPD Criminal Interdiction Unit, of which Detective Brinker is a member.

On November 24, 2020, Special Agent Arthur held a briefing meeting with Detective Brinker and other members of the DEA and the IMPD Criminal Interdiction Unit. During the meeting, Special Agent Arthur advised those in attendance that Mr. Coates had planned to sell four ounces of methamphetamine to the CS at a specified location, and Special Agent Arthur explained the plan to conduct an interdiction traffic stop of Mr. Coates on his way to that transaction. Special Agent Arthur also provided photographs of Mr. Coates and his vehicle, as well as information about Mr. Coates' criminal history, including his convictions for burglary, robbery, and possession of a firearm by a convicted felon. Special Agent Arthur also relayed to the group that Mr. Coates had told the CS that he carries a firearm.

Later on November 24, DEA Task Force Officer Derek Heller informed Detective Brinker that he had observed Mr. Coates commit a traffic violation by crossing the white lane divider and the double yellow line. [*See also* Filing No. 33-1 at 1.] As a result, Detective Brinker initiated a traffic stop of Mr. Coates' vehicle. The entire traffic stop was captured by body cameras worn by Detective Brinker and IMPD Detective Joseph Kraeszig, as well as by the dashboard camera in Detective Brinker's police vehicle.[1] The videos of the traffic stop reflect the following sequence of events.

Detective Brinker approached Mr. Coates' vehicle and informed Mr. Coates that he had been pulled over because he crossed the white line. [Brinker Bodycam at 01:30-01:40.] Mr. Coates was accompanied by a female passenger, who was later identified as a missing juvenile. [Brinker Bodycam at 01:30-02:00; Brinker Bodycam at 17:10-17:18; Filing No. 33-1 at 2.]

Detective Brinker remarked that Mr. Coates "seem[ed] pretty nervous" and collected Mr. Coates' license, registration, and insurance. [Brinker Bodycam at 02:01-02:16.] Detective Brinker testified that he observed what he believed to be a marijuana or synthetic marijuana cigarette sitting on top of a Mountain Dew can in the cupholder in the center console area. [*See also* Filing No. 33-1 at 1; Filing No. 37-2 (photograph of the suspected marijuana cigarette).] Detective Brinker asked Mr. Coates to exit the vehicle, and when Mr. Coates asked what was

---

[1] Mr. Coates submitted the video footage from Detective Brinker's body camera, [*see* Filing No. 34], and the Court will refer to this video as "Brinker Bodycam." The Government submitted a split screen video containing video footage from Detective Brinker's body camera on one side, and video footage from the dashboard camera in Detective Brinker's vehicle on the other. [*See* Filing No. 37-3.] The body camera footage in the split screen video is merely a shorter version of the same body camera footage submitted by Mr. Coates, and as a result, the timestamp citations for the same event are different for each video and do not precisely line up. Accordingly, to avoid confusion, the Court will refer to this video as "Brinker Dashcam" and will reference only the side of the split screen containing the dashboard camera footage. In addition, the Government submitted video footage from Detective Kraeszig's body camera, [*see* Filing No. 37-4], which the Court will refer to as "Kraeszig Bodycam."

going on, Detective Brinker stated that "marijuana is not illegal [sic] in the state of Indiana yet." [Brinker Bodycam at 02:57-03:14.] Detective Brinker immediately placed Mr. Coates in handcuffs and led him away from his vehicle, to the front of Detective Brinker's police vehicle. [Brinker Bodycam at 03:13-03:53; Brinker Dashcam at 01:43-02:28.] While doing so, Detective Brinker repeatedly referenced the marijuana cigarette. [Brinker Bodycam at 03:13-03:55.]

Detective Brinker then conducted a pat-down search of Mr. Coates' person. [Brinker Bodycam at 03:55-04:35; Brinker Dashcam at 02:29-03:16.] Detective Brinker testified that at this time, he believed that he had arrested Mr. Coates and that he was conducting the pat-down search incident to that arrest. Immediately after commencing the pat-down, Detective Brinker instructed another officer on the scene to conduct a K9 sweep of Mr. Coates' vehicle. [Brinker Dashcam at -2:41-02:43.]

During the pat-down, Detective Brinker located a black pouch attached to Mr. Coates' belt loop with a carabiner device. [Brinker Bodycam at 4:18-04:28; Brinker Dashcam at 02:58-03:08.] Detective Brinker removed the pouch from Mr. Coates' belt loop and placed it on the hood of the police vehicle. [Brinker Bodycam at 04:18-04:28; Brinker Dashcam at 02:58-03:08.] At this time, the female passenger was unrestrained and speaking to Detective Kraeszig nearby. [Kraeszig Bodycam at 04:35-05:05.]

Then, Detective Brinker patted and briefly squeezed Mr. Coates' front left pants pocket. [Brinker Bodycam at 04:28-04:30.] According to Detective Brinker, he felt a "hard, small, chunk like object" that he believed to be narcotics. [Filing No. 33-1 at 2.] He testified that, based on his experience as a narcotics detective, he believed that the size, shape, and texture of the object was consistent with methamphetamine. Detective Brinker then opened Mr. Coates' !pocket, looked inside, and remarked, "Well, that's gonna get you in a little bit of trouble right

4

there, right bud?" [Brinker Bodycam at 04:31-04:35; Brinker Dashcam at 03:10-03:14.] Detective Brinker testified that when he observed the object in Mr. Coates' pocket, he confirmed that it appeared to be methamphetamine. After observing methamphetamine in Mr. Coates' pocket, Detective Brinker announced that Mr. Coates was under arrest and read him his *Miranda* rights. [Brinker Bodycam at 04:35-05:05; Brinker Dashcam at 03:15-03:35.]

Seconds after Detective Brinker finished reading Mr. Coates his *Miranda* rights, another officer grabbed the pouch off the hood of the police vehicle, opened it, and showed the contents to Detective Brinker. [Brinker Dashcam at 03:46-04:01.] At approximately the same time that the officer first opened the pouch, the K9 "alerted to the seat" of Mr. Coates' vehicle. [Brinker Dashcam at 03:55-04:02.] Detective Brinker testified that, in total, the K9 gave two positive indications for narcotics in the vehicle. [*See also* Filing No. 33-1 at 2 (Detective Brinker's report stating that the K9 "gave a positive alert on both the front and rear doors on the driver side to the odor of narcotics").]

Thereafter, the officers on scene photographed, documented, and bagged the items collected, including the suspected marijuana cigarette from the car, and the suspected methamphetamine from his pocket and from his pouch. [Brinker Bodycam at 8:01-17:04; Brinker Dashcam at 06:33-16:45.] Besides the suspected marijuana cigarette and the items taken from Mr. Coates' pocket and pouch, no additional narcotics were located inside the vehicle. [Filing No. 33-1 at 2.] Initial presumptive testing revealed that methamphetamine and marijuana were found in Mr. Coates' pocket and in his pouch. [Filing No. 33-1 at 3.]

Following the traffic stop, DEA Task Force Officer Heller applied for a warrant to search Mr. Coates' RV, based primarily on the methamphetamine discovered on Mr. Coates' person during the traffic stop. [Filing No. 33-2.] A judicial officer in Hancock County, Indiana signed

5

the warrant. [Filing No. 33-2 at 3.] During the search of the RV, law enforcement located two firearms. [*See* Filing No. 2 at 6.]

## II.
### DISCUSSION

Mr. Coates argues that all of the items seized pursuant to the pat-down search—including the items in his pocket and the items in the pouch—must be suppressed because the pat-down did not meet the requirements of a valid *Terry* stop. [Filing No. 33 at 3-5 (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)).] Specifically, he contends that there were no facts creating a reasonable suspicion of criminal activity because the pat-down was based on his possession of a suspected marijuana cigarette, but the Marion County Prosecutor announced in September 2019 that his office would no longer prosecute cases involving misdemeanor possession of small amounts of marijuana. [Filing No. 33 at 4.] In any event, Mr. Coates argues, there were no specific and articulable facts indicating that he was armed or might pose a danger to others, and therefore nothing to justify the pat-down. [Filing No. 33 at 4-5.] Mr. Coates further asserts that even if the pat-down was authorized under *Terry*, Detective Brinker exceeded the bounds of a valid *Terry* stop and violated *Minnesota v. Dickerson*, 508 U.S. 366 (1993), when he manipulated the object in Mr. Coates' pants pocket and looked inside the pocket. [Filing No. 33 at 5-6.] Finally, Mr. Coates argues that because the search warrant authorizing the search of the RV was based on evidence illegally obtained during the traffic stop, "the search warrant is the fruit of the poisonous tree and evidence seized pursuant to that warrant must be suppressed." [Filing 33 at 6-7.]

The Government responds that in light of the deterrent purpose of the exclusionary rule, that rule should not be applied to suppress evidence in this case. [Filing No. 39 at 11-12.] The Government argues that *Terry* does not control, because the methamphetamine seized from Mr.

Coates during the traffic stop was discovered pursuant to a valid search incident to arrest. [Filing No. 39 at 12-17.] Specifically, the Government contends that despite the Marion County Prosecutor's policy against prosecuting cases involving the possession of small amounts of marijuana, the possession of marijuana and synthetic marijuana (and operating a vehicle while under the influence of those substances) is still illegal. [Filing No. 39 at 12-13.] The Government asserts that possession of the suspected marijuana cigarette gave Detective Brinker probable cause to arrest Mr. Coates and the arrest occurred when Detective Brinker ordered Mr. Coates out of the vehicle, informed him that marijuana is illegal, and placed him in handcuffs. [Filing No. 39 at 13-15.] The Government further argues that the search of Mr. Coates' pocket and pouch was a valid search incident to his arrest, because: (1) both areas were within Mr. Coates' immediate control; (2) the search of both areas occurred contemporaneously with his arrest; and (3) the female passenger was unrestrained nearby when the pouch was searched. [Filing No. 39 at 15-17.]

In the alternative, the Government argues that if the Court decides that *Terry* controls, the search was nonetheless valid because: (1) the observation of a suspected marijuana cigarette and the knowledge of the DEA's prior investigation gave Detective Brinker reasonable suspicion of criminal activity; (2) based on his knowledge of Mr. Coates' criminal history and potential involvement in an imminent narcotics transaction, Detective Brinker had reason to believe that Mr. Coates might be armed; and (3) seizure of the methamphetamine from Mr. Coates' pocket was reasonable under the "plain feel" doctrine. [Filing No. 39 at 17-20.] The Government contends that Detective Brinker did not impermissibly manipulate Mr. Coates' pocket before looking inside. [Filing No. 39 at 19-20.] As another alternative, the Government contends that the doctrine of inevitable discovery applies because, given the totality of the circumstances—

including the visible suspected marijuana cigarette and the presence of a narcotics K9 on the scene—"there was no realistic course of events that would have resulted in [Mr.] Coates leaving the scene without being arrested and searched." [Filing No. 39 at 20-21.]

Finally, the Government argues that the search of the RV was permissible because: (1) the warrant was valid because it was based on lawfully obtained evidence; and (2) even if the Court concludes that the evidence on which the warrant was based was not lawfully obtained, law enforcement executed the warrant in good faith. [Filing No. 39 at 21-23.][2]

In reply, Mr. Coates maintains that the exclusionary rule requires the suppression of evidence seized in violation of the Fourth Amendment, regardless of the policy considerations underlying that rule. [Filing No. 46 at 1-2.] Mr. Coates argues that the search of his person and pouch was not a valid search incident to arrest. [Filing No. 46 at 2-5.] Specifically, he contends that he was not arrested until Detective Brinker announced that he was under arrest and read him his *Miranda* rights, which was after Detective Brinker patted him down, removed the pouch from his person, and peered into his pocket. [Filing No. 46 at 4.] Mr. Coates argues that even if he was arrested at the moment when he was removed from the vehicle and placed in handcuffs, the search of the pouch was nonetheless invalid because: (1) the search of the pouch was not contemporaneous with the arrest as it occurred several minutes later; and (2) the pouch was not in his immediate vicinity as it had been removed from his person and placed on the hood of the police car. [Filing No. 46 at 4-5.] Mr. Coates maintains that *Terry* controls, and that Detective Brinker violated both *Terry* and *Dickerson*. [Filing No. 46 at 5-6.] Mr. Coates further contends that the inevitable discovery doctrine does not apply and that the Government's argument "is

---

[2] The Government also argued that Mr. Coates' motion should be denied as untimely, [Filing No. 39 at 10-11], but later withdrew that argument, [Filing No. 45]. Because the timeliness argument was withdrawn, the Court need not address it.

pretty non-specific as to how or why [a search of Mr. Coates' person or pouch] would have occurred" given that such search was not justified under *Terry* and that no additional contraband was discovered in his vehicle that would have led to his arrest. [Filing No. 46 at 6.] Finally, as to good faith, Mr. Coates asserts that the probable cause affidavit supporting the warrant to search the RV did not detail the circumstances under which methamphetamine was discovered during the traffic stop, and the "silence regarding the circumstances of the pat-down speaks volumes as to what the officers thought about its validity." [Filing No. 46 at 7-8.] He asserts that the good faith exception cannot apply because the officers obtaining the warrant acted recklessly or dishonestly in failing to disclose all relevant facts in the warrant application. [Filing No. 46 at 8-9.]

### A. The Search that Occurred During the Traffic Stop

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  Warrantless searches are presumptively unreasonable under the Fourth Amendment. *E.g., United States v. Correa*, 908 F.3d 208, 218 (7th Cir. 2018) (citations omitted). Accordingly, a search conducted in the absence of a warrant is only reasonable if it falls within a specific exception to the warrant requirement. *Id.* (citations omitted).

One such exception "is the long-established rule that a warrantless search may be conducted incident to a lawful arrest." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174 (2016); *see also United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) ("If an officer has probable cause to arrest, [he] also may conduct a search incident to that lawful arrest without any additional justification."). Mr. Coates maintains that this exception does not apply, essentially

9

because he was not formally under arrest when his pocket was searched, and because the pouch was outside of the permissible scope of a search incident to his arrest. The Court will address each of these issues in turn.

### 1. Whether and When Mr. Coates was Arrested

"'A warrantless arrest is constitutionally permissible if supported by probable cause.'" *Paige*, 870 F.3d at 699 (quoting *United States v. Sands*, 815 F.3d 1057, 1061-62 (7th Cir. 2015)). "A police officer has probable cause to make an arrest if a reasonable person, knowing all of the facts and circumstances known to this officer, would believe that the individual in question has committed or is committing a crime." *United States v. Cherry*, 920 F.3d 1126, 1133 (7th Cir.), *cert. denied*, 140 S. Ct. 296 (2019) (citing *Seiser v. City of Chicago*, 762 F.3d 647, 654 (7th Cir. 2014)).

"A seizure within the meaning of the Fourth Amendment takes place if, in view of all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave." *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). "'A seizure becomes an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *United States v. Eymann*, 962 F.3d 273, 284 (7th Cir. 2020) (quoting *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)). "[A]n arrest requires at minimum that the subject's freedom of movement is terminated or restrained by intentionally applied physical force or submission to an assertion of authority." *United States v. Hill*, 818 F.3d 289, 293 (7th Cir. 2016) (internal quotations and citation omitted). Several factors are relevant in deciding whether an investigatory stop has become an arrest, including: (1) the officer's intent in stopping the individual; (2) whether there was a

search; (3) whether or how much questioning occurred; (4) whether there was a show of force; and (5) "whether the person stopped could be said to have been taken into custody." *Eymann*, 962 F.3d at 284 (quoting *United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir. 1987)).

Mr. Coates does not dispute Detective Brinker's authority to initiate the traffic stop upon receiving information that Mr. Coates had committed a traffic violation. Shortly after initiating the stop, Detective Brinker observed what he believed to be a marijuana cigarette on top of the Mountain Dew can in Mr. Coates' center console area. Possession of marijuana is a crime under both Indiana and federal law. *See* Ind. Code § 35-48-4-11; 21 U.S.C. § 844. Accordingly, when Detective Brinker observed the suspected marijuana cigarette, he had probable cause to believe that Mr. Coates was committing a crime.[3]

Furthermore, the relevant factors indicate that a formal arrest occurred when Mr. Coates was removed from his vehicle and placed in handcuffs. Detective Brinker intended to arrest Mr. Coates for possession of marijuana, and he expressed that intent by repeatedly referencing the marijuana cigarette and the illegality of marijuana while handcuffing Mr. Coates. Detective Brinker then proceeded to pat down Mr. Coates, as is common in connection with formal arrests. A reasonable person in Mr. Coates' position would have understood the situation to constitute a restraint on his freedom of movement to a degree associated with a formal arrest.

Although Mr. Coates relies heavily on the fact that Detective Brinker did not announce that Mr. Coates was under arrest when he was first handcuffed, he points to no authority

---

[3] Mr. Coates' argument that possession of the suspected marijuana cigarette did not constitute criminal activity because the Marion County Prosecutor has announced a policy against prosecuting such cases is a nonstarter. That policy has no impact on the illegality of marijuana in the state of Indiana. Further, the determination of whether probable cause existed at the time of arrest necessarily cannot depend upon whether the arrestee is later prosecuted or convicted, as that is a future contingency not known to the officer at the time of arrest. *See Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998) ("The fact that Kelley was not actually convicted of trespass does not mean that there was not probable cause for her arrest.").

11

indicating that a formal arrest does not occur until the arresting officer says it is occurring. The standard for determining when an arrest has occurred is based on the totality of the circumstances, and "the arresting officer need not engage in any formal, ritualistic series of actions such as handcuffing, reading *Miranda* rights, or announcing that the suspect was under arrest." *Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019); *see also Eymann*, 962 F.3d at 285 (refusing to treat police officers' testimony that defendants were "in custody" during the encounter as dispositive, in part because "the question whether a person is under arrest is an objective one, not one that depends on the officers' beliefs"). Indeed, permitting police officers to simply declare when an arrest occurs, regardless of when their conduct and the relevant circumstances demonstrate that the requisite level of restraint was achieved, would be entirely inconsistent with the extensive body of caselaw setting the standards for when an arrest is made.

In sum, the Court finds that Mr. Coates was arrested within the meaning of the Fourth Amendment when he was removed from his vehicle and placed in handcuffs, before the pat-down commenced.[4] In light of this conclusion, Mr. Coates' arguments concerning *Terry* are inapposite and need not be addressed.

---

[4] Although the Court makes the above finding with respect to the timing of Mr. Coates' arrest, the Court observes that were it to adopt Mr. Coates' position that his arrest occurred mere minutes later, after the pat-down had commenced and when Detective Brinker announced that Mr. Coates was under arrest and read him his *Miranda* rights, the result would be the same. The Seventh Circuit has expressly acknowledged that "even a search that occurs before an arrest may be deemed lawful as incident to that arrest, so long as probable cause for an arrest existed independently of the evidence discovered during the search." *United States v. Leo*, 792 F.3d 742, 748 n.1 (7th Cir. 2015); *see also Paige*, 870 F.3d 693, 701 (7th Cir. 2017) ("Because [the officer] had probable cause to arrest [the defendant] for [marijuana possession and operating a vehicle while under the influence], her subsequent pat down of [the defendant] was permissible incident to that arrest. This result is unaffected by [the officer's] decision to conduct the search *before* arresting [the defendant]. As the Supreme Court explained in *Rawlings v. Kentucky*, [448 U.S. 98, 111 (1980),] '[w]here the formal arrest follow[s] quickly on the heels of the challenged search,' it is not 'particularly important that the search preceded the arrest rather than vice versa.'" (internal citations omitted) (emphasis and alterations in internal quotation original). Here, as

### 2. *Scope of the Search Incident to Arrest*

Under the search-incident-to-arrest doctrine, once an officer has made a lawful arrest, the officer may search the arrestee's person and the area within the arrestee's immediate control. *Birchfield*, 136 S. Ct. at 2175-76 (discussing *United States v. Robinson*, 414 U.S. 218, 224 (1973)). "The search must be contemporaneous with the arrest, conducted to prevent use of a weapon or the destruction of evidence and limited to the area immediately within the arrestees' immediate control." *United States v. Bennett*, 908 F.2d 189, 193 (7th Cir. 1990).

The rule allowing an officer to search an arrestee's person incident to arrest "extends to personal effects found on the arrestee's person at the time of arrest." *United States v. Gary*, 790 F.3d 704, 709 (7th Cir. 2015). For example, the Supreme Court has upheld a search of "a crumpled cigarette package found in the arrestee's pocket" and "an arrestee's clothes taken from him while he was in custody." *Id.* (discussing *Robinson*, 414 U.S. at 251, and *United States v. Edwards*, 415 U.S. 800, 805 (1974)); *see also Riley v. California*, 573 U.S. 373, 392 (2014) (acknowledging that lower courts applying Supreme Court precedent have "approved searches of a variety of personal items carried by an arrestee," including a billfold, address book, wallet, and purse); *United States v. Rutley*, 482 F. App'x 175, 177 (7th Cir. 2012) ("The search of [the defendant's] bag was valid as a search incident to arrest, because the Fourth Amendment permits officers to search, without a warrant, any container carried by an arrestee, including bags, purses, wallets, and books.").

The area within the arrestee's immediate control includes "the area within grabbing distance," where "a weapon might be concealed that [the arrestee] could attempt to use against

---

described above, Detective Brinker had probable cause to arrest Mr. Coates upon seeing the suspected marijuana cigarette, and that probable cause was not dependent upon or related to any of the evidence subsequently discovered. Thus, if he had conducted the pat-down prior to the moment of arrest, that fact would be immaterial.

the officers or in which there might be evidence of his crime that he could destroy." *United States v. Tejada*, 524 F.3d 809, 811 (7th Cir. 2008) (citations omitted). The fact that an arrestee is handcuffed at the time of the search is not dispositive, and the Seventh Circuit has recognized that custodial arrests are often dangerous, police are not required "to presume that an arrestee is wholly rational," and "[p]ersons under stress may attempt actions which are unlikely to succeed." *Bennett*, 908 F.2d at 193-94 (discussing *United States v. Queen*, 847 F.2d 346, 346, 352 (7th Cir. 1988)); *see also Tejada*, 524 F.3d at 812 ("Handcuffed, lying face down on the floor, and surrounded by police, he was unlikely to be able to make a successful lunge for the entertainment center. But the police did not know how strong he was, and he seemed desperate.").

Here, the search of Mr. Coates' pocket and pouch occurred close in time to his arrest. Video footage of the encounter shows that less than one minute elapsed between when Mr. Coates was handcuffed and when Detective Brinker began the search by patting Mr. Coates' jacket pocket. [*See* Brinker Dashcam at 01:55-02:36.] The pouch was removed from Mr. Coates' belt loop during the pat down. [*See* Brinker Dashcam at 02:30-03:10.] Approximately two minutes elapsed between the time when Mr. Coates was placed in handcuffs and when an officer picked up the pouch from the hood of the police vehicle, unzipped it, and showed its contents to Detective Brinker. [*See* Brinker Dashcam at 01:55-03:57.] The total time that elapsed between Detective Brinker's first contact with Mr. Coates and the opening of the pouch is approximately four minutes. [*See* Brinker Dashcam at 00:00-04:00.][5] Given that the initial

---

[5] In his initial brief, Mr. Coates represents that officers did not begin to search the pouch until approximately ten minutes into the Brinker Bodycam video. [Filing No. 33 at 3.] It is true that officers can be seen examining the pouch around that point in that video. [*See* Brinker Bodycam at 09:40-10:04.] However, an officer picked up the pouch from the hood of the police vehicle, opened it for the first time, and showed the contents to Detective Brinker several minutes earlier, approximately five minutes into the Brinker Bodycam video. [*See* Brinker Bodycam at 05:05-05:25.] The Court acknowledges that this first look at the pouch is somewhat difficult to see on

14

contact, arrest, and search all occurred within a matter of minutes, the Court finds that the requirement that the search be contemporaneous with the arrest is satisfied. *See United States v. Mitchell*, 64 F.3d 1105, 1110 (7th Cir. 1995) (concluding that search was contemporaneous with arrest when the officer conducted it "[i]mmediately after securing" the arrestee); *United States v. Willis*, 37 F.3d 313, 318 (7th Cir. 1994) (concluding that search was contemporaneous with arrest when the officer commenced the search "shortly after he had secured [the defendant] and well before [the defendant] was transported to the police station"); *United States v. Satterfield*, 410 F.2d 1351, 1354 (7th Cir. 1969) (concluding that search was contemporaneous with arrest when "the search took place at the scene of [the defendant's] arrest and only minutes later").

The search was also appropriately limited to Mr. Coates' person and the area within his immediate control. There can be no dispute that Mr. Coates' pocket constitutes part of his person and was subject to search incident to his arrest. Similarly, the pouch was attached to his person at the time of his arrest, was removed during the search, and was opened by another officer at essentially the same time that Detective Brinker was continuing to search Mr. Coates. Thus, it was also subject to search incident to the arrest as a personal effect on his person.[6] *See Gary*, 790 F.3d at 709; *Rutley*, 482 F. App'x at 177.

---

the Brinker Bodycam video, but the Brinker Dashcam video (which includes a split screen that contains the corresponding footage from Detective Brinker's body camera) confirms that approximately four minutes into the Brinker Dashcam video (which corresponds to approximately five minutes into the Brinker Bodycam video), an officer opened the pouch for the first time. Regardless, even if the search of the pouch occurred a few minutes later, as Mr. Coates suggests, the result would not change because such search would still be contemporaneous with the arrest.

[6] Although the Court has already rejected Mr. Coates' argument that the pouch was removed from his person before his arrest and searched after his arrest, even if that were the case, the result would be the same. The pouch was placed on the hood of the police vehicle while Mr. Coates was standing immediately in front of the vehicle. Although he was in handcuffs, the pouch nonetheless was within "grabbing distance" and he could conceivably have attempted to

15

In sum, the search of Mr. Coates' pocket and pouch was permissible, and none of the items discovered during the search that occurred on the scene of the traffic stop should be suppressed. Mr. Coates' Motion to Suppress, [32], is **DENIED** to the extent that it seeks exclusion of any of those items.

### B. Subsequent Search of the RV

"If a search or seizure violates the Fourth Amendment, a court will generally exclude resulting evidence." *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (citing *United States v. Wilbourn*, 799 F.3d 900, 910 (7th Cir. 2015)). Having concluded that the evidence seized during the traffic stop was legally obtained in compliance with the Fourth Amendment, the Court can easily reject Mr. Coates' argument that the search warrant for the RV premised on that evidence should be excluded as fruit of the poisonous tree. The Court need not reach the Government's alternative good faith argument. Nevertheless, the Court observes that in light of the evidence submitted by the parties and presented at the hearing, there is no indication that the officers involved in this case acted recklessly or dishonestly in applying for a warrant to search the RV. Mr. Coates' Motion to Suppress, [32], is **DENIED** to the extent that it seeks exclusion of any items discovered during the search of the RV.

---

reach for it to try to destroy evidence contained therein, and therefore the pouch would have been subject to a search incident to arrest on that basis. *See Tejada*, 524 F.3d at 811-12 (concluding that officers were permitted to open a cabinet inside of an entertainment center after suspect was arrested and handcuffed nearby); *Bennett*, 908 F.2d at 193 (upholding search of defendants' luggage inside the hotel room where they were arrested, after they had been handcuffed, as valid search incident to arrest). Furthermore, the fact that Mr. Coates' female passenger was on the scene, unrestrained, while the pouch was on the hood of the police vehicle also renders the search of the pouch appropriate incident to Mr. Coates' arrest. *See United States v. Mancillas*, 580 F.2d 1301, 1306 (7th Cir. 1978) (concluding that the defendant's proximity "to the package [that was searched], in addition to the fact that there were three other men in the single motel room with at least reasonably direct access to the package, brings this case within the exception to the warrant requirement for searches incident to a lawful arrest").

## III.
### CONCLUSION

For the foregoing reasons, Mr. Coates' Motion to Suppress, [32], is **DENIED**.

Date: 12/6/2021

*(signature)*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**